## CHICAGO DISTILLING COMPANY *v.* STONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 130. Argued and submitted January 6, 1891. — Decided May 25, 1891.

The provision in Rev. Stat. § 3309, that if the Commissioner of Internal Revenue, on making a monthly examination of a distiller's return, " finds that the distiller has used any grain or molasses in excess of the capacity of his distillery as estimated according to law, he shall make an assessment against the distiller," etc., refers to the real average spirit-producing capacity of the distillery, and not to a fictitious capacity for any particular day or days.

THE case is stated in the opinion.

*Mr. Joseph Kirkland* for plaintiff in error, submitted on his brief.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action brought by the Chicago Distilling Company, the plaintiffs in error, against Rensselaer Stone, a collector of internal revenue, to recover a certain sum alleged to have been unlawfully exacted by him from the plaintiffs, by assessing them for a pretended excess of grain distilled by them beyond the rated capacity of their distillery, in the month of September, 1885. A jury was waived and the cause was tried by the court upon an agreed statement of facts, and judgment rendered for the defendant. The case is now here on writ of error. In order to a better understanding of it a few explanatory observations will be proper.

The law requires that every distillery, before operations are commenced, shall be surveyed for the purpose of estimating and determining its true spirit-producing capacity for a day of twenty-four hours. Rev. Stat. § 3264. This is done by ascertaining the number of fermenting tubs, the capacity of each, and the fermenting period required for the particular process to be followed. The distiller may use all of his tubs or only a part of them. Those not used are sealed up by the collector or his deputy, and the distiller is only charged for those which are open; but he is obliged to pay the excise due for the full spirit-producing capacity of the latter whether he manufactures the amount or not. If he uses any grain in excess of the capacity of his distillery as estimated according to law, an assessment is made against him at the rate of ninety cents for every proof gallon of such excess. It is an assessment of this kind of which the plaintiffs complain. Whenever a distiller desires to open or close any of his tubs for the purpose of increasing or reducing the capacity of his distillery, he must give notice to that effect to the collector, who makes the change by sealing or opening the tubs designated. Rev. Stat. § 3311. It is not pretended that the plaintiffs failed in any respect to comply with this requirement of the law, or that they used, or ceased to use, any fermenting tubs without the knowledge and sanction of the collector of internal revenue.

Another provision of the law requires that on the first of each month a return shall be made to the collector by the distiller, or his principal manager, under oath, of the amount of materials used for the production of spirits each day during the previous month, and the number of gallons and proof-gallons of spirits produced and placed in the warehouse. Rev. Stat. §§ 3307, 3309.

In the present case there is no dispute as to the *bona fides* of the plaintiffs, or as to their business being conducted regularly and lawfully in every way, unless the matter hereafter referred to should be regarded as open to exception. The controversy is explained by the agreed statement of facts, the material parts of which are as follows:

"1. The Chicago Distilling Co., plaintiff herein, a corporation duly organized and existing under the laws of Illinois, paid to the defendant (then collector of internal revenue for the first district of Illinois), under protest, the sum of fifty-seven dollars and eighty-three cents, on the 26th day of August, 1886.

"2. The said company, in September, 1885, operated a duly bonded and registered distillery, known as distillery No. 5, first district of Illinois.

"3. By government survey the said distillery contained fifteen fermenting tubs, numbered No. 1 to No. 15, inclusive, each having a total working capacity of 438.46 bushels of grain. It was using, under the said survey, a three-day fermenting period, and under the regulations of the Treasury Department the daily capacity of each fermenting tub was one-third of the total working capacity — that is to say, 146.15 bushels of grain.

"4. The following table is a true statement of the openings and closings of fermenting tubs and the mashings of grain and distillations of spirits during September, 1885, and also of the grain in mash brought forward from the preceding month, and of the grain in mash carried forward to the succeeding month, and the notices for such openings and closings of fermenting tubs were duly filed in apt time and proper form, and the designated fermenting tubs were regularly, by the

authorized agents of the government, opened at the times specified, and the respective quantities of grain named in the said table as mashed and distilled were the quantities which were actually made and distilled ; all as therein set forth under appropriate headings."

[Omitting the first part of the month as not material, the headings and details of the latter part, from the 18th to the 30th, are as follows :]

| Day of month. | MASHING. | | Day of month. | DISTILLATION. | |
|---|---|---|---|---|---|
| | Fermenting tubs opened by collector and filled by distiller. | Grain mashed. | | Fermenting tubs empt'd by distiller and closed by collector. | Grain used, i.e. distilled. |
| | *Serial Nos.* | *Bushels.* | | *Serial Nos.* | *Bushels.* |
| 18 | No. 10, No. 11, No. 12.. | 1,315.50 | 21 | No. 7, No. 8, No. 9.... | 1,315.50 |
| 19 | No. 13, No. 14, No. 15.. | 1,315.50 | 22 | No. 10, No. 11, No. 12.. | 1,315.50 |
| 21 | No. 1, No. 2.......... | 877.00 | 23 | No. 13, No. 14, No. 15.. | 1,315.50 |
| 22 | No. 3, No. 4.......... | 877.00 | 24 | No. 1, No. 2.......... | 877.00 |
| 23 | No. 5, No. 6, No. 7..... | 1,315.50 | 25 | No. 3, No. 4.......... | 877.00 |
| 24 | No. 8, No. 9, No. 10.... | 1,315.50 | 26 | No. 5, No. 6, No. 7.... | 1,315.50 |
| 25 | No. 11, No. 12, No. 13.. | 1,315.50 | 28 | No. 8, No. 9, No. 10... | 1,315.50 |
| 26 | No. 14, No. 15, No. 1... | 1,315.50 | 29 | No. 11, No. 12, No. 13.. | 1,315.50 |
| 28 | No. 2, No. 3.......... | 877.00 | 30 | No. 14, No. 15, No. 1... | 1,315.50 |
| 29 | No. 4, No. 5.......... | 877.00 | | | |
| 30 | No. 6, No. 7, No. 8..... | 1,315.50 | | | |
| | | 33,326.00 | | | |
| | Deduct mashing of 28th, 29th and 30th Sept., carr. for'd to Oct.... | 3,069.50 | | | |
| | | 30,256.50 | | | 30,256.50 |

"5. A certain assessment of tax in the sum of fifty-seven dollars and eighty-three cents was made in regular form and apt time against the Chicago Distilling Company by the Commissioner of Internal Revenue, acting on behalf of the U. S., and was duly certified to the defendant herein for collection from the plaintiff herein. The ground for said assessment was that during the month of September, 1885, as decided by said Commissioner, there was used at said distillery for the production of spirits by the distiller, this plaintiff, a certain quantity of grain, to wit, $294\frac{81}{100}$ bushels, in excess of the capacity of said distillery for said month as

estimated according to law; said Commissioner deciding that said capacity for each and every working day during said month was as set forth in that part of the following tabular statement which is marked A, but this plaintiff claiming it to be as set forth in that part of said statement which is marked B.

| A. | | | | B. | | | |
|---|---|---|---|---|---|---|---|
| Sept. | 1............ | 876.93 | bushels. | Sept. | 1............ | 877.00 | bushels. |
| " | 2............ | 876.93 | " | " | 2............ | 877.00 | " |
| " | 3............ | 876.93 | " | " | 3............ | 877.00 | " |
| " | 4...........1,023.08 | | " | " | 4............ | 877.00 | " |
| " | 5...........1,023.08 | | " | " | 5............ | 877.00 | " |
| " | 7...........1,023.08 | | " | " | 7...........1,315.50 | | " |
| " | 8...........1,023.08 | | " | " | 8............ | 877.00 | " |
| " | 9...........1,023.08 | | " | " | 9............ | 877.00 | " |
| " | 10...........1,023.08 | | " | " | 10...........1,315.50 | | " |
| " | 11...........1,315.39 | | " | " | 11...........1,315.50 | | " |
| " | 12...........1,315.39 | | " | " | 12...........1,315.50 | | " |
| " | 14...........1,315.39 | | " | " | 14...........1,315.50 | | " |
| " | 15...........1,315.39 | | " | " | 15...........1,315.50 | | " |
| " | 16...........1,315.39 | | " | " | 16...........1,315.50 | | " |
| " | 17...........1,315.39 | | " | " | 17...........1,315.50 | | " |
| " | 18...........1,315.39 | | " | " | 18...........1,315.50 | | " |
| " | 19...........1,315.39 | | " | " | 19...........1,315.50 | | " |
| " | 21...........1,315.39 | | " | " | 21...........1,315.50 | | " |
| " | 22...........1,169.24 | | " | " | 22...........1,315.50 | | " |
| " | 23...........1,169.24 | | " | " | 23...........1,315.50 | | " |
| " | 24...........1,169.24 | | " | " | 24............ | 877.00 | " |
| " | 25...........1,169.24 | | " | " | 25............ | 877.00 | " |
| " | 26...........1,169.24 | | " | " | 26...........1,315.50 | | " |
| " | 28...........1,169.24 | | " | " | 28...........1,315.50 | | " |
| " | 29...........1,169.24 | | " | " | 29...........1,315.50 | | " |
| " | 30...........1,169.24 | | " | " | 30...........1,315.50 | | " |

"6. The demand for and collection of the said sum of money from the plaintiff by the defendant was made by the defendant under and by virtue of the said assessment by the Commissioner of Internal Revenue.

"7. The plaintiff, before the said tax was assessed, petitioned the Commissioner of Internal Revenue that the same be not

assessed; after the assessment was made he petitioned that the assessment might be abated, and after payment as above set forth he petitioned that the sum paid might be refunded; all which petitions were denied by the said Commissioner."

The agreed statement then sets forth a document known as Circular 238, being a regulation of the Treasury Department issued in due form, and known to the plaintiffs. As we understand the counsel for the government, it is claimed by the defendant that this Circular fixes and defines the daily producing capacity of a distillery by taking the average capacity of the fermenting period of three days, four days, or whatever it may be. Thus if the fermenting period is three days, and the producing capacity is 500 bushels of grain the first day, 500 the second day, and 200 the third day, the average for the three days is 400 bushels; and the Circular makes this average the daily capacity. So long as the fermenting period comes wholly within the calendar month no difficulty occurs; for then the actual results of the three days' work agree with the result for the same days produced by the fictitious daily capacity imposed by the Circular. But when, as in the present case, it happens that two of the days come in one month (September) and the third comes in the next month (October), a discrepancy arises in the former month between the fiction, and the fact. The three days in group came on the 29th and 30th of September and the 1st of October. The actual production, as well as capacity, on the first two days was 1315.50 bushels of distilled mash each day, being the product of three tubs filled on the 25th of September and three others on the 26th of that month, whilst on the 1st of October the production was only 877 bushels, being the product of two tubs filled on the 28th of September (Sunday, the 27th, not being counted). The production of the whole three days, therefore, was 3508 bushels (or, precisely, 3507.71 bushels), one-third of which, namely, 1169.24, being the average production per day, was prescribed by the department Circular as the daily producing capacity of the distillery at that time. This fictitious estimate made the producing capacity of the last two days of September equal to only 2338.48 bushels, whilst the actual pro-

duction for those two days was 2631 bushels, an excess of 292.52 bushels, which, together with some minute fractional differences during the rest of the month, amounted in all to 294.81 bushels, for which the assessment complained of by the plaintiffs was made. Now, although this very excess of production over the estimated capacity in September will be balanced by a corresponding deficiency in October, yet the distiller gets no benefit from that. He never gets any credit for deficiency; but is always charged extra for any excess.

It seems to us perfectly apparent from this statement that the distiller is subjected to an unjust mulct, or assessment, by a mere fiction. The counsel for the government argues that the Commissioner of Internal Revenue could not do otherwise than as he did in prescribing the requirements of Circular 238, because the statute requires that the original survey of the distillery shall determine its true spirit-producing capacity for a day of twenty-four hours, and the same expression, producing capacity "for every twenty-four hours," is prescribed in the form of notice to be given by the distiller in declaring his intention to carry on the business, and in applying for a reduction or change of capacity in his establishment. Rev. Stat. §§ 3259, 3311. But those expressions evidently mean no more than average producing capacity in a given time. "A day of twenty-four hours" is named for the purpose of expressing with greater certainty and precision the exact period of duration for which the average capacity of production was to be ascertained or fixed. That nothing but "average" was intended is manifest from the fact that no distillery under ordinary conditions has any spirit-producing capacity in twenty-four hours. It requires three days, four days and sometimes six days, to produce the article desired. And the statute which imposes an extra assessment for over-production does not make the average daily capacity the standard, but merely the capacity of the distillery. The words are: "If the commissioner finds that the distiller has used any grain or molasses in excess of the capacity of his distillery as estimate; according to law, he shall make an assessment against the distiller at the rate of ninety cents for every proof-gallon of spirits that

should have been produced from the grain or molasses so used in excess." Rev. Stat. § 3309. The expression, "the capacity of his distillery as estimated according to law," clearly refers to the real capacity as thus ascertained, and not to a fictitious capacity for any particular day or days.

As the judgment of the court below was based upon the view taken by the counsel of the government, we think it was erroneous, and must be reversed. The judgment is accordingly

*Reversed, and the cause remanded with directions to enter judgment for the plaintiff, and take such further proceedings as may be in accordance with this opinion.*